UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
Case No.:

OWEN ELLIS,

Plaintiff,

v.

LINEAGE LOGISTICS, LLC

Defendant.

## COMPLAINT

Plaintiff, OWEN ELLIS ("Plaintiff"), by and through the undersigned counsel, hereby files this Complaint and sues Defendant, LINEAGE LOGISTICS, LLC ("Defendant"), and alleges as follows:

## NATURE OF THE ACTION

This is an action for damages arising from the Defendant's violations of 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII"), the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et seq. ("ADEA"), and the Florida Civil Rights Act of 1992, Fla. Stat. § 760 et seq. ("FCRA"). Plaintiff, an African American male of Jamaican national origin and over forty years of age, seeks redress for race, national origin, and age discrimination, hostile work environment, and retaliation following his protected activity, including formal complaints of discriminatory treatment and workplace harassment. Defendant terminated Plaintiff's 24-year employment in December 2023 under pretextual circumstances shortly after he engaged in protected activity, in violation of federal and state law.

**PARTIES**

1. At all times material, Plaintiff, Owen Ellis, was and is an adult resident of Broward County, Florida.

2. At all times material, Plaintiff was employed by Lineage Logistics, LLC ("Defendant") within the Southern District of Florida.

3. At all times material, Plaintiff was a "person", "aggrieved person" and an "employee" as defined by 42 U.S.C. § 2000e(f), 29 U.S.C. § 630, and Fla. Stat. § 760.02.

4. At all times material, Plaintiff was also a member of a protected class based on race, national origin, and age, as those terms are defined under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, the Age Discrimination in Employment Act ("ADEA"), and the Florida Civil Rights Act ("FCRA").

5. At all times material, Defendant, Lineage Logistics, LLC, was and is a "person" and an "employer" within the meaning of 42 U.S.C. § 2000e(b), 29 U.S.C. § 630, and Fla. Stat. § 760.02.

6. Defendant is a foreign limited liability company authorized to conduct business in the State of Florida, with its principal place of business located at 11000 NW 36th Avenue, Miami, Florida 33167, where Plaintiff worked and where the unlawful employment practices alleged herein occurred

7. During the relevant period of time, Defendant employed more than fifteen (15) employees for each working day in at least twenty (20) calendar weeks in the current and preceding year, and engaged in an industry affecting commerce.

## JURISDICTION AND VENUE

8. This Court has subject-matter jurisdiction pursuant to 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. §§ 1331 and 1343(3)–(4), as this action arises under the laws of the United States prohibiting discrimination in employment.

9. This Court has supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367(a) because those claims form part of the same case or controversy under Article III of the United States Constitution. Plaintiff's state law claims share all common operative facts with their federal law claims, and the parties are identical. Resolving Plaintiff's federal and state claims in a single action serves the interests of judicial economy, convenience, consistency, and fairness to the parties.

10. Venue is proper in this District under 28 U.S.C. § 1391(b) because the acts and omissions giving rise to these claims occurred in whole or in part in Miami-Dade County, Florida, where Defendant does business, resides for venue purposes, and maintains Plaintiff's employment records.

## CONDITIONS PRECEDENT

11. The Plaintiff has complied with all conditions precedent in filing this action, to wit:

a) The Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission, Miami District Office;

b) The charge was dual-filed with the Florida Commission on Human Relations (FCHR) under Fla. Stat. § 760.10.

c) On or about August 12, 2025, the EEOC issued a Notice of Right to Sue, authorizing Plaintiff to commence a civil action in federal court.

d) This Complaint is timely filed within ninety (90) days of Plaintiff's receipt of that Notice.

12. Any other applicable conditions precedent to bringing this action have occurred, been performed or been excused before the filing of this lawsuit.

**GENERAL ALLEGATIONS COMMON TO ALL COUNTS**

13. Plaintiff Owen L. Ellis is an African American male of Jamaican national origin, born December 21, 1959.

14. At all times material Plaintiff was over 40 and a member of multiple protected classes under federal and Florida state law, based on his race, national origin, and age.

15. Defendant, Lineage Logistics, LLC ("Lineage") is a large, multi-state employer with 500+ employees and was, at all times material, Plaintiff's employer within the meaning of Title VII, § 1981, ADEA, and the FCRA.

16. Plaintiff began working for Lineage (and its predecessor) on or about March 1999.

17. For nearly 24 years, Mr. Ellis performed exemplary work. He repeatedly received positive recognition including a longstanding, 17-year perfect attendance record and was trusted to run the night shift with minimal support. No disciplinary actions appear in his file prior to the events at issue.

18. Plaintiff started within one of the lower positions and worked his way up 4 different positions to a manager.

19. After steadily advancing through hourly roles (including freezer and inventory positions), he served as Night Supervisor/Night Manager for over 17 years with a spotless record.

20. On or about April 2023, Lineage delivered Mr. Ellis' regular performance review and a raise.

21. There was no mention of any performance issues or concerns in Mr. Elllis' April 2023 performance evaluations.

22. Weeks after his performance evaluation, during or around May or June 2023, management presented Mr. Ellis a value card thanking him for the great job he had done on managing freight, and complimenting him for great leadership.

23. The accolades are evidence of Mr. Ellis' years of high level and consistent performance of core supervisory tasks including inventory, batteries, and equipment readiness.

24. Then, immediately after Mr. Ellis's spouse (also a Lineage employee) submitted a resignation letter on June 19, 2023, which raised discrimination concerns, Defendant's treatment of Mr. Ellis changed abruptly. For example, Mr. Ellis was excluded from supervisor meetings, cut out of interview panels for his own shift, and assigned heavier workloads/longer hours than younger and non-Black supervisors.

25. Particularly, shortly after June 19, 2023, Operations Manager Rafael Cruz and GM Brent Stuart began to isolate Mr. Ellis from normal supervisory functions such as meetings and interviews for his own night shift, despite his 17-year tenure managing that shift.

26. Plaintiff complained to the Defendant, but nothing was done.

27. Despite Plaintiff's complaint placing Defendant on clear notice of the discriminatory and retaliatory treatment, Defendant did nothing to correct or prevent it.

28. Rather, Defendant's retaliatory treatment of Plaintiff became more aggressive, each time he complained.

29. For instance, Manager Rafael Cruz and Brent Stuart told Plaintiff to transfer to take a lower position, at a different facility to work a different shift. Mr. Ellis declined the involuntary transfer, asserting that he did not request or agree to any demotion.

30. Despite Defendant's ongoing and discriminatory conduct against Mr. Ellis, he continued to perform his job duties and responsibilities, as he had done for nearly 24 years.

31. Unfortunately, Defendant continued in its discriminatory, retaliatory and harassing conduct against Plaintiff. Throughout the relevant period, Plaintiff was systematically excluded from the hiring and interview process for his own shift. Interviews for positions under Plaintiff's supervision were conducted by others without his knowledge or participation. Plaintiff was not even informed when new hires had been selected and would often learn of new personnel only upon encountering them on the floor.

32. Plaintiff never refused to participate in any interviews and never indicated an inability to communicate with Spanish-speaking applicants. Plaintiff speaks and understands some Spanish, and prior to the leadership change, the Company routinely provided a translator where needed. There was never any legitimate reason to exclude Plaintiff from these interviews.

33. Then, without justification, on or about October 2, 2023, managers Stuart and Cruz told Mr. Ellis his performance was "not up to par" and that HR would prepare a Performance Improvement Plan ("PIP"). This was the first hint of any alleged deficiencies in Mr. Ellis job performance following decades of solid reviews and recent praise.

34. Mr. Ellis expressed his confusion given the high praises he'd recently received and requested examples of specific deficiencies and refuted the managers' false accusations of sub-par job performance, but the Defendant ignored Plaintiff.

35. Days later, and without having provided a proper response to Plaintiff, on or about October 6, 2023, Stuart and Cruz presented a written PIP and coerced Mr. Ellis to sign it, with Stuart stating: "I'm not letting you leave the room until you sign the PIP."

36. Mr. Ellis sought time to review the PIP, but was not provided the opportunity, and was instead forced to sign the PIP.

37. Based on information and belief, at the time Mr. Ellis was placed on a PIP. No other similarly situated non-Black supervisor was placed on a PIP, underscoring disparate treatment.

38. After Plaintiff was forced to sign the PIP, he was subjected to enhanced micromanagement, and he was subjected to weekly harassing follow-ups untethered to any bona fide performance gaps.

39. Management taunted Mr. Ellis and intimidated him with their impromptu and aggressive demands of him to recite the company's core values.

40. On or about October 19, 2023, Mr. Ellis filed a written complaint with Defendant's Human Resources (HR) explicitly reporting race, national-origin, and age discrimination and retaliation.

41. HR took no corrective action.

42. In response, the Defendant intensified its isolation and write-ups of Plaintiff in an effort to continue to build its unjustified paper-trail.

43. Defendant's managers even went as far as reducing the support provided to Mr. Ellis, causing Plaintiff to suffer chronic understaffing during the night shifts. In comparison, Plaintiff noticed that while support staff was reduced or withheld on the night shift, the same

leadership provided additional bilingual support to the younger supervisors and managers on different shifts.

44. Additionally, Lineage created a Warehouse Lead role for Supervisor Jeison, who speaks English and Spanish, despite previously promising comparable support to Mr. Ellis and never delivering it.

45. As the retaliatory pressure escalated, Mr. Ellis experienced stress-related health symptoms (hypertension, dizziness, swelling) requiring urgent-care visits; the PIP regimen and micromanagement were the precipitating stressors.

46. On or about December 15, 2023, Lineage terminated Mr. Ellis, citing “not meeting expectations,” less than three (3) months after his protected HR complaint and in the wake of his spouse’s protected activity.

47. At the time of termination, the Defendant attempted to rely on unsigned “corrective action” documents, asserting older incidents, and which had never been presented to, received or signed by Mr. Ellis during his employment.

48. Lineage’s late-invented write-ups, inflated nitpicks, and coerced PIP are inconsistent with Mr. Ellis’s April 2023 raise, contemporaneous praise, and two decades of strong performance.

49. Prior to Plaintiff’s termination, management promised Plaintiff that a similar support role would be assigned to assist with his shift, in recognition of his workload and staffing needs. Despite this assurance, Defendant never provided Plaintiff with such assistance.

50. Instead, after Plaintiff’s termination, Defendant provided exactly the support Plaintiff had been denied by creating the Warehouse Lead role, assigning it to a younger, non-

Black employee, and restructuring the shift responsibilities, splitting them among younger and non-Black employees, including but not limited to a Hispanic employee and a younger trainee, neither of whom possessed Plaintiff's length of experience or tenure.

51. Defendant's failure to address Plaintiff's complaints allowed a pattern of racial, national origin and age discrimination to escalate into his unlawful termination.

52. Any other stated reason is an attempted cover up for Defendant's unlawful termination of Plaintiff's employment

53. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered lost wages, lost benefits, emotional distress, depression, humiliation, mental anguish, and loss of professional dignity.

54. Plaintiff continues to suffer damages and seeks all relief available under Title VII, 42 U.S.C. § 1981, the ADEA) and the FCRA, including wages, compensatory, punitive, and equitable relief.

55. Defendant's discriminatory and retaliatory conduct toward the Plaintiff was motivated by Plaintiff's race, national origin and/or age.

56. Plaintiff has retained the undersigned counsel to represent him in this action and has agreed to pay a reasonable attorney's fee.

**COUNT I – RACE and NATIONAL ORIGIN DISCRIMINATION (DISPARATE TREATMENT) – TITLE VII**

57. Plaintiff re-adopts and realleges each and every factual allegation set forth in paragraphs 1 through 56 above as though fully restated herein.

58. Plaintiff is an African American male of Jamaican national origin who, for nearly 24 years, maintained an exemplary employment record with Defendant and consistently met or exceeded legitimate performance expectations.

59. Around May 2023, after Plaintiff's spouse (also an employee) reported concerns about race and national-origin discrimination, Defendant's management abruptly changed its treatment of Plaintiff. He was excluded from supervisor meetings, stripped of authority to interview or train staff for his own shift, denied promised support personnel, micromanaged, and assigned heavier workloads and longer hours than younger or non-Black supervisors.

60. In October 2023, General Manager Brent Stuart and Operations Manager Rafael Cruz coerced Plaintiff to sign a PIP despite decades of strong reviews and an April 2023 raise accompanied by a written commendation for "great leadership." No other similarly situated non-Black supervisor was placed on a PIP for comparable conduct, evidencing disparate enforcement of workplace standards.

61. Plaintiff objected to the discriminatory treatment and, on October 19, 2023, submitted a written HR complaint reporting race and national origin discrimination. Rather than correct the bias, Defendant intensified its scrutiny and exclusion of Plaintiff, culminating in his termination on December 15, 2023, barely eight weeks after his protected complaint.

62. Defendant replaced Plaintiff with younger, lighter-skinned and/or non-Black or non-Jamaican employees, including a Hispanic successor, while retaining White and younger supervisors who engaged in the same or more serious conduct without discipline. Such facts demonstrate that Plaintiff's race and national origin were motivating factors in Defendant's decision to discipline and terminate him.

63. Defendant's purported reasons for the adverse actions were pretextual, contradicted by contemporaneous praise, raises, and the absence of any legitimate performance deficiency before Plaintiff's protected activities.

64. As a direct and proximate result of Defendant's unlawful race- and ancestry-based discrimination, Plaintiff has suffered and continues to suffer lost wages, lost benefits, loss of professional reputation, and severe emotional pain, humiliation, and distress.

65. Defendant's conduct was willful, malicious, and carried out with reckless indifference to Plaintiff's federally protected rights.

**WHEREFORE**, the Plaintiff respectfully requests that this Honorable Court:

a) Issue an order enjoining the Defendant to cease and desist from the conduct described in Count I of this Complaint and from harassing Plaintiff in any manner whatsoever.

b) Issue an order requiring the Defendant to take steps to protect Plaintiff and other similarly situated employees from the type of conduct described in Count I of this Complaint, and from all other forms of harassment in the future.

c) Issue an order requiring the Defendant to adopt and disseminate a policy protecting employees from harassment in the workplace and establishing reasonable and adequate procedures for investigating complaints of harassment and taking suitable remedial action.

d) Award the Plaintiff back pay, including overtime pay, pension benefits, and other employment benefits which would have accrued if the Plaintiff's employment had not been terminated.

e) Award the Plaintiff compensatory damages for his emotional suffering.

f) Award the Plaintiff punitive damages.

g) Award the Plaintiff attorneys' fees, including expert witness fees, pursuant to 42 U.S.C.A. § 2000e-5(k).

h) Award the Plaintiff costs, interest, and such other relief as this Court may deem proper.

**COUNT II: RACE AND NATIONAL ORIGIN DISCRIMINATION (HOSTILE WORK ENVIRONMENT) – TITLE VII**

66. Plaintiff re-adopts and realleges each and every factual allegation set forth in paragraphs 1 through 56 above as though fully restated herein.

67. Plaintiff is an African American male of Jamaican national origin who, for nearly 24 years, maintained an exemplary employment record with Defendant and consistently met or exceeded legitimate performance expectations.

68. Commencing immediately after Plaintiff's spouse complained of racial discrimination in Defendant's work environment, Plaintiff's supervisors and managers engaged in a persistent pattern of severe and pervasive harassment, including: (a) excluding Plaintiff from supervisor meetings and critical communications necessary to run his shift; (b) removing Plaintiff from the interview and hiring process for his own shift and conducting interviews behind his back without informing him of applicants or new hires; (c) assigning Plaintiff disproportionately heavier workloads and longer hours than younger and non-Black supervisors; (d) denying Plaintiff the bilingual operational support previously promised to him while providing such support to younger employees; (e) isolating Plaintiff from normal managerial duties and undermining his authority in front of staff; (f) coercing Plaintiff into signing a PIP under threat, despite decades of strong performance and recent positive evaluations; and (g) subjecting Plaintiff to ongoing micromanagement, intimidation, and weekly harassing "check-ins" untethered to any legitimate performance deficiencies. This conduct altered the terms and conditions of Plaintiff's employment and created a hostile work environment.

69. The Plaintiff did not welcome the conduct described in paragraphs 1 through 56 and advised the Defendant that such conduct was unwelcome.

70. The Plaintiff was subjected to harassment because of his race and national origin.

71. The harassment adversely affected Plaintiff's psychological well-being.

72. The harassment unreasonably interfered with the Plaintiff's work performance.

73. The harassment to which the Plaintiff was subjected would affect the psychological well-being and unreasonably interfere with the work performance of a reasonable man.

74. Defendant's harassment was sufficiently widespread, pervasive, and prevalent in the Defendant' workplace at all times pertinent hereto to charge the Defendant with constructive notice of it.

75. The Plaintiff gave the Defendant actual notice of the harassment soon after the discriminatory, retaliatory and harassing conduct against him began, by verbally complaining and filing a written complaint.

76. The Defendant failed to investigate the Plaintiff's complaints.

77. The Defendant failed to take adequate remedial action.

78. The harassment continued to occur following the Plaintiff's complaint and the Defendant's response.

79. The Plaintiff sustained emotional suffering and injury attributable to the harassment.

80. The Corporate Defendant acted with malice and with reckless indifference to the Plaintiff's civil rights and emotional and physical well-being.

**WHEREFORE**, the Plaintiff respectfully requests that this Honorable Court:

a) Issue an order enjoining the Defendant to cease and desist from the conduct described in Count II of this Complaint and from harassing the Plaintiff in any manner whatsoever.

b) Issue an order requiring the Defendant to take steps to protect the Plaintiff and other similarly situated employees from the type of conduct described in Count II of this Complaint, and from all other forms of harassment in the future.

c) Issue an order requiring the Defendant to adopt and disseminate a policy protecting employees from harassment in the workplace and establishing reasonable and adequate procedures for investigating complaints of harassment and taking suitable remedial action.

d) Order reinstatement of the Plaintiff to the position she would occupy and with all the benefits she would have if she had not suffered adverse employment action attributable to the harassment or award the Plaintiff front pay in an amount to be determined at trial if reinstatement is determined at trial to be impractical.

e) Award the Plaintiff back pay, including overtime pay, pension benefits, and other employment benefits which would have accrued if the Plaintiff's employment had not been terminated.

f) Award the Plaintiff compensatory damages for his emotional suffering.

g) Award the Plaintiff punitive damages.

h) Award the Plaintiff attorneys' fees, including expert witness fees, pursuant to 42 U.S.C.A. § 2000e-5(k).

i) Award the Plaintiff costs, interest, and such other relief as this Court may deem proper.

**COUNT III: RACE AND NATIONAL ORIGIN DISCRIMINATION (RETALIATION) – TITLE VII**

81. The Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1 through 56 above as if set out in full herein.

82. Plaintiff is an African American male of Jamaican national origin who, for nearly 24 years, maintained an exemplary employment record with Defendant and consistently met or exceeded legitimate performance expectations.

83. The Plaintiff complained about discrimination.

84. Particularly, and relevant to this claim, the Plaintiff complained of being excluded from supervisory responsibilities, denied support and resources provided to non-Black supervisors, subjected to false performance criticisms, and targeted for removal after raising concerns of race, and national origin discrimination and retaliation.

85. As a result of Plaintiff's complaints, he was terminated.

86. The Plaintiff sustained emotional suffering and injury attributable to the harassment.

87. The Defendant acted with malice and with reckless indifference to the Plaintiff's civil rights and emotional and physical well-being.

**WHEREFORE**, the Plaintiff respectfully requests that this Honorable Court:

a) Issue an order enjoining the Defendant to cease and desist from the conduct described in Count III of this Complaint and from harassing the Plaintiff in any manner whatsoever.

b) Issue an order requiring the Defendant to take steps to protect the Plaintiff and other similarly situated employees from the type of conduct described in Count III of this Complaint, and from all other forms of harassment in the future.

c) Issue an order requiring the Defendant to adopt and disseminate a policy protecting employees from harassment in the workplace and establishing reasonable and adequate procedures for investigating complaints of harassment and taking suitable remedial action.

d) Order reinstatement of the Plaintiff in the position she would occupy and with all the benefits she would have if she had not suffered adverse employment action attributable to harassment, or award the Plaintiff front pay in an amount to be determined at trial if reinstatement is determined at trial to be impractical.

e) Award the Plaintiff back pay, including overtime pay, pension benefits, and other employment benefits which would have accrued if the Plaintiff's employment had not been terminated.

f) Award the Plaintiff compensatory damages for his emotional suffering.

g) Award the Plaintiff punitive damages.

h) Award the Plaintiff attorneys' fees, including expert witness fees, pursuant to 42 U.S.C.A. § 2000e-5(k).

i) Award the Plaintiff costs, interest, and such other relief as this Court may deem proper.

**COUNT IV: RACE AND NATIONAL ORIGIN DISCRIMINATION (DISPARATE TREATMENT) – 42 U.S.C. § 1981**

88. Plaintiff adopts and incorporates by reference the allegations contained in paragraphs 1 through 56 of this Complaint as if fully set forth herein.

89. Plaintiff, Owen L. Ellis, is a Black male of African and Jamaican descent, and therefore a member of a protected class of non-Caucasian citizens.

90. At all times relevant, Plaintiff was in a contractual relationship with Lineage Logistics, LLC, within the meaning of 42 U.S.C. § 1981, as amended, which guarantees all persons within the United States the same right to make and enforce contracts as is enjoyed by White citizens.

91. Throughout his nearly twenty-four (24) years of employment with Lineage Logistics, Plaintiff performed his duties with loyalty and excellence, consistently earning commendations, merit raises, and the respect of his peers and subordinates.

92. Despite this record, Defendant subjected Plaintiff to unequal and discriminatory treatment in the terms, conditions, and privileges of his employment because of his race and national origin.

93. Beginning in or about June 2023, immediately after Plaintiff's spouse, also an employee, raised internal complaints of race discrimination, Defendant's management, including General Manager Brent Stuart and Operations Manager Rafael Cruz, began a campaign of hostility and exclusion against Plaintiff.

94. Plaintiff was removed from supervisor meetings, denied assistance and staffing support promised to him, and assigned heavier and less desirable workloads than White or lighter-skinned, and/or younger, supervisors performing comparable roles.

95. On or about October 2023, Defendant coerced Plaintiff to sign a baseless PIP under threat of termination despite his clean record and only months after he received a pay raise and written commendation card for "great leadership." No White or non-Black supervisor was subjected to a PIP for similar or more serious alleged infractions.

96. Defendant's policies, practices, and decisions, deprived Plaintiff of the same benefits, privileges, terms, and conditions of employment enjoyed by White employees, in violation of 42 U.S.C. § 1981(b).

97. Defendant's conduct also denied Plaintiff the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by White citizens, and denied him the right to make and enforce contracts, including the continuing contractual relationship of employment, as guaranteed by § 1981(a).

98. Through its actions and treatment of Plaintiff, Defendant and its managerial agents intentionally discriminated against Plaintiff on the basis of his race and Jamaican ancestry, and maintained policies and practices designed or intended to favor non-Black employees.

99. During his employment, Plaintiff was subjected to a discriminatory, hostile, and offensive work environment because of his race and national origin including humiliation, unjustified scrutiny, and exclusion from decision-making forums that similarly situated White supervisors routinely attended.

100. Lineage Logistics, through its managerial employees Stuart, Cruz, and others, had actual knowledge of the racially discriminatory acts and condoned, approved, or failed to remedy them despite Plaintiff's written complaint to Human Resources on October 19, 2023, expressly reporting race-based mistreatment.

101. Despite this notice, Defendant took no corrective action. Instead, the company escalated its retaliation and hostility, culminating in Plaintiff's wrongful termination on December 15, 2023.

102. Defendant knowingly and willfully violated federal law, acting with malice and reckless indifference to Plaintiff's civil rights and his emotional and physical well-being.

103. As a direct and proximate result of the foregoing unlawful conduct, Plaintiff has suffered significant economic losses, including lost wages, lost benefits, and diminished career opportunities, as well as embarrassment, humiliation, depression, emotional distress, and damage to his professional reputation.

104. Plaintiff's damages are ongoing and continuous in nature and will continue unless this Court provides full relief.

**WHEREFORE**, the Plaintiff requests that this Honorable Court:

a) Enter judgment in the Plaintiff's favor and against the Defendant for its violations of 42 U.S.C.A. § 1981, as amended;

b) Award the Plaintiff actual damages suffered;

c) Award the Plaintiff compensatory damages under 42 U.S.C.A. § 1981 for the embarrassment, anxiety, depression, humiliation and emotional distress the Plaintiff has suffered;

d) Award the Plaintiff prejudgment interest on his damages award;

e) Award the Plaintiff punitive damages;

f) Enjoin the Defendant, its officers, agents, employees and anyone acting in concert with them, from discriminating, harassing and retaliating against the Plaintiff and any employee;

g) Award the Plaintiff reasonable costs and attorneys' fees; and

h) Grant the Plaintiff such other and further relief as this Court deems equitable and just.

**COUNT V – RACE DISCRIMINATION (HOSTILE WORK ENVIRONMENT) – 42 U.S.C. § 1981**

105. Plaintiff adopts and incorporates by reference the allegations in paragraphs 1 through 56 of this Complaint as if fully set forth herein.

106. Plaintiff, Owen L. Ellis, is an African American male of Jamaican national origin, and therefore a member of a protected class of Black citizens under 42 U.S.C. § 1981.

107. At all times relevant, Plaintiff was in a contractual employment relationship with Lineage Logistics, LLC, within the meaning of 42 U.S.C. § 1981(b), which protects the right to make and enforce contracts free from racial discrimination.

108. During the course of Plaintiff's employment with Defendant, the company violated Plaintiff's rights by depriving him of the same benefits, privileges, terms, and conditions of employment that were afforded to Caucasian and non-Black employees in similar positions, in violation of 42 U.S.C. § 1981(b).

109. Throughout 2023, and particularly after Brent Stuart assumed the role of General Manager and Rafael Cruz became Operations Manager, Plaintiff's workplace environment deteriorated dramatically. Plaintiff was systematically marginalized, stripped of responsibilities, and subjected to racial and national-origin bias that was severe, pervasive, and objectively hostile.

110. Defendant's management personnel frequently spoke to Plaintiff in a demeaning and dismissive tone, referred to him as "old school," and suggested that he was "too slow for the younger team." Younger, non-Black supervisors were allowed to make similar or worse operational errors without consequence, while Plaintiff was routinely reprimanded and humiliated in front of subordinates.

111. Despite Plaintiff's long and unblemished record spanning over twenty-four (24) years, management began circulating false narratives questioning his "attitude" and "fit," a pretext used to isolate him from meetings, remove his input from team decisions, and publicly undermine his credibility.

112. Plaintiff's repeated attempts to address the escalating hostility were ignored. On October 19, 2023, Plaintiff submitted a formal written complaint to Human Resources, detailing the racial, national-origin, and age-based hostility he was enduring from supervisors. HR acknowledged receipt of the complaint but took no corrective action.

113. Instead of addressing the discrimination, Defendant's management retaliated by increasing its hostility subjecting Plaintiff to heightened scrutiny, denying him assistance from warehouse staff, and intentionally setting him up to fail by overloading his nightly assignments.

114. During his final weeks of employment, Plaintiff was routinely harassed, micromanaged, and undermined; excluded from meetings and interviews for his own shift; denied the bilingual support and staffing previously promised; and repeatedly targeted with unfounded accusations of poor performance, all of which were designed to create a false record to justify his removal.

115. Defendant's discriminatory acts and omissions including its failure to investigate or correct the harassment created a hostile and abusive work environment so intolerable that it culminated in Plaintiff's termination on December 15, 2023, under false pretenses.

116. At all times material hereto, Lineage Logistics, LLC had knowledge of the discriminatory and harassing conduct by its supervisory personnel, including Stuart and Cruz, yet failed to take any remedial or disciplinary action to stop the abuse.

117. Defendant's failure to act despite multiple internal complaints and the obvious pattern of discriminatory treatment constitutes deliberate indifference and an intentional violation of Plaintiff's federally protected rights.

118. Defendant's treatment, practices, and policies directed toward Plaintiff denied him the full and equal benefits of all laws and proceedings for the security of persons and property as are enjoyed by Caucasian and non-Black employees, in violation of 42 U.S.C. § 1981.

119. Defendant knowingly and willfully maintained a racially hostile work environment with malice and reckless indifference to Plaintiff's rights, causing severe emotional and financial harm.

120. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer embarrassment, humiliation, emotional distress, mental anguish, reputational harm, and the loss of income and benefits.

121. Plaintiff's damages are ongoing and continuous, including loss of dignity, personal hardship, and economic loss as a result of Defendant's racially hostile work environment.

**WHEREFORE**, the Plaintiff respectfully requests that this Honorable Court:

a) Issue an order enjoining the Defendant to cease and desist from the conduct described in this Count of this Complaint and from harassing the Plaintiff in any manner whatsoever.

b) Issue an order requiring the Defendant to take steps to protect the Plaintiff and other similarly situated employees from the type of conduct described in this Count of this Complaint, and from all other forms of harassment in the future.

c) Issue an order requiring the Defendant to adopt and disseminate a policy protecting employees from harassment in the workplace and establishing reasonable and adequate procedures for investigating complaints of harassment and taking suitable remedial action.

d) Order reinstatement of the Plaintiff to the position he would occupy and with all the benefits he would have if he had not suffered adverse employment action attributable to harassment, or award the Plaintiff front pay in an amount to be determined at trial if reinstatement is determined at trial to be impractical.

e) Award the Plaintiff back pay, including overtime pay, pension benefits, and other employment benefits which would have accrued if the Plaintiff's employment had not been terminated.

f) Award the Plaintiff compensatory damages for his emotional suffering.

g) Award the Plaintiff punitive damages.

h) Award the Plaintiff attorneys' fees, including expert witness fees, pursuant to 42 U.S.C.A. § 2000e-5(k).

i) Award the Plaintiff costs, interest, and such other relief as this Court may deem proper.

**COUNT VI: RACE AND NATIONAL ORIGIN DISCRIMINATION (RETALIATION) – 42 U.S.C.A. § 1981**

122. The Plaintiff adopts and incorporates by reference the allegations in paragraphs 1 through 56 of this Complaint.

123. The Plaintiff is a member of a protected class of Black citizens.

124. At all times relevant, the Plaintiff was in a contractual relationship with Defendant within the meaning of 42 U.S.C.A. § 1981, as amended.

125. During the course of the Plaintiff's employment relationship, the Defendant have violated Plaintiff's rights by depriving him of his right to the enjoyment of all benefits, privileges, terms and conditions of his employment contract as is enjoyed by Caucasian or non-Black employees, in violation of 42 U.S.C.A. § 1981(b), as amended.

126. During the course of the Plaintiff's employment with Defendant, the Plaintiff has not enjoyed the same benefits, privileges, terms and conditions of employment, as have Caucasian or non-Black employees of the Defendant.

127. The Defendant' treatment, practices and policies directed toward the Plaintiff, as more fully described in paragraphs 13 through 56 of this Complaint, denied the Plaintiff the full and equal benefits of all laws and proceedings for the security of persons and property as is enjoyed by Caucasian or non-Black employees, in violation of 42 U.S.C.A. § 1981, as amended.

128. The Defendant' treatment, practices and policies directed toward the Plaintiff, as more fully described in paragraphs 13 through 56, denied the Plaintiff the right to make and enforce contracts as enjoyed by Caucasian or non-Black employees, in violation of 42 U.S.C.A. § 1981, as amended.

129. Through its actions and treatment of the Plaintiff, the Defendant intended to discriminate against the Plaintiff on the basis of the Plaintiff's race and ancestry.

130. Despite Defendant's knowledge of the ongoing discrimination, it failed to take remedial action.

131. Plaintiff complained about race and national origin discrimination.

132. In response, the Defendant terminated Plaintiff's employment.

133. Defendant knowingly and willfully violated the law. Defendant acted with malice and with reckless indifference to the Plaintiff's rights and emotional and physical well-being.

134. As a direct and proximate result of the foregoing, the Plaintiff has suffered embarrassment, humiliation, emotional distress, and other forms of damage.

135. The Plaintiff has suffered damages of an on-going and continuous nature.

**WHEREFORE**, the Plaintiff requests that this Honorable Court:

a) Enter judgment in the Plaintiff's favor and against the Defendant for its violations of 42 U.S.C.A. § 1981, as amended;

b) Award the Plaintiff actual damages suffered;

c) Award the Plaintiff compensatory damages under 42 U.S.C.A. § 1981 for the embarrassment, anxiety, depression, humiliation and emotional distress the Plaintiff has suffered;

d) Award the Plaintiff prejudgment interest on his damages award;

e) Award Plaintiff punitive damages;

f) Enjoin the Defendant, its officers, agents, employees and anyone acting in concert with them, from discriminating, harassing and retaliating against the Plaintiff and any employee;

g) Award the Plaintiff reasonable costs and attorneys' fees; and

h) Grant the Plaintiff such other and further relief as this Court deems equitable and just.

**COUNT VII: RACE AND NATIONAL ORIGIN DISCRIMINATION (DISPARATE TREATMENT) – FCRA**

136. The Plaintiff re-states and re-alleges paragraphs 1 through 56 as if set forth in full herein.

137. At all times material hereto, the Defendant failed to comply with the Florida Civil Rights Act of 1992, Fla. Stat. § 760.10 *et seq*., which states, in part, that it is an unlawful employment practice for an employer "[t]o discharge or to fail or refuse to hire any individual, or

otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, national origin, age, handicap, or marital status.”

138. The Plaintiff is a member of protected class of African American Jamaican citizens.

139. During the course of the Plaintiff’s employment with the Defendant, the Plaintiff has been subjected to a discriminatory, hostile and offensive work environment because of his race and national origin, as more fully described in paragraphs13 through 56 of this Complaint.

140. The discriminatory conduct referred to in paragraphs 13 through 56 of this Complaint is and was offensive to the Plaintiff and would be offensive to a reasonable person.

141. The Plaintiff was subjected to the conduct referred to in this Complaint because he is a Black, African American person of Jamaican descent.

142. Similarly situated employees who are not a Black, African American person of Jamaican descent were not subjected to the conduct described and referred to in paragraphs 13 through 56 of this Complaint.

143. During the course of the Plaintiff’s employment with the Defendant, the Plaintiff has been subjected to a discriminatory, hostile and offensive work environment because of his race and national origin, as more fully described in paragraphs 13 through 56.

144. The Plaintiff was and is qualified for his position while working for the Defendant.

145. The Defendant violated the Florida Civil Rights Act by discriminating against the Plaintiff because of his race and national origin in the terms, conditions, and privileges of his employment.

146. As a direct and proximate result of the Defendant's intentional conduct, the Plaintiff has suffered, is now suffering and will continue to suffer emotional distress, humiliation, embarrassment and economic losses.

147. Any alleged nondiscriminatory reason for this treatment of the Plaintiff by the Defendant is a mere pretext for the actual reason for discriminating against him based on his race and national origin.

148. The Defendant's actions were malicious and were recklessly indifferent to the Plaintiff's rights pursuant to Fla. Stat. § 760.10.

149. The aforementioned actions of the Defendant were done wantonly, willfully, maliciously and with reckless disregard of the consequences of such actions.

**WHEREFORE**, the Plaintiff requests that this Honorable Court:

a) Declare that the acts complained of herein are in violation of the Florida Civil Rights Act;

b) Award the Plaintiff compensatory damages for emotional distress, embarrassment and humiliation;

c) Grant a permanent injunction enjoining the Defendant, its officers, successors, assigns, and all persons in active concert or participation with it, from engaging in any employment practice which discriminates on the basis of race and national origin.

d) Order the Defendant to make the Plaintiff whole, by compensating him for lost wages, benefits, including front pay, back pay with prejudgment interest;

e) Award a monetary judgment representing prejudgment interest;

f) Award any other compensation allowed by law including punitive damages and attorneys' fees (448.104);

g) Award the Plaintiff costs of this action, including reasonable attorneys' fees;

h) Grant such other and further relief as the Court deems just and proper.

**COUNT VIII: RACE AND NATIONAL ORIGIN DISCRIMINATION (HOSTILE WORK ENVIRONMENT) – FCRA**

150. The Plaintiff re-states and re-alleges paragraphs 1 through 56 as if set forth in full herein.

151. The Plaintiff is a Black, African American person of Jamaican descent and as such is a member of a group protected under the FCRA on the basis of his race and national origin.

152. Commencing on or about June 19, 2023, immediately after Plaintiff's spouse submitted her resignation letter raising concerns of racial and national origin discrimination, Defendant's managers and supervisors, including General Manager Brent Stuart and Operations Manager Rafael Cruz, engaged in a persistent pattern of severe and pervasive harassment involving: (a) excluding Plaintiff from supervisor and management meetings necessary for him to perform his role; (b) removing Plaintiff from the interview and hiring process for his own night shift and conducting those interviews behind his back; (c) assigning Plaintiff heavier workloads, longer hours, and chronic understaffing compared to younger and non-Black supervisors; (d) denying Plaintiff the bilingual operational support previously promised while providing such support to younger and non-Black supervisors; (e) undermining Plaintiff's authority in front of subordinates and isolating him from routine supervisory decision-making; and (f) coercing Plaintiff into signing an unwarranted Performance Improvement Plan despite decades of strong performance and recent commendations. This discriminatory and retaliatory course of conduct altered the terms and conditions of Plaintiff's employment and created an objectively hostile and abusive working environment.

153. The Plaintiff did not welcome the conduct described in paragraphs 13 through 56, and advised that such conduct was unwelcome.

154. The Plaintiff was subjected to the harassment because of his race and national origin.

155. At all times material hereto, the Defendant failed to comply with the Florida Civil Rights Act of 1992, Fla. Stat. § 760.10 *et seq*., which states, in part, that it is an unlawful employment practice for an employer "to discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, national origin, age, handicap, or marital status."

156. The Plaintiff is a member of protected class of race and national origin.

157. During the course of the Plaintiff's employment with the Defendant, the Plaintiff has been subjected to a discriminatory, hostile and offensive work environment because of his race and national origin, as more fully described in paragraphs 13 through 56 of this Complaint.

158. The discriminatory conduct referred to in paragraphs 13 through 56 of this Complaint is and was offensive to the Plaintiff and would be offensive to a reasonable person.

159. The Plaintiff was subjected to the conduct referred to in this Complaint because he is Black, African American person of Jamaican descent.

160. Similarly situated employees who are not African American or of Jamaican descent were not subjected to the conduct described and referred to in paragraphs 13 through 56 of this Complaint.

161. During the course of the Plaintiff's employment with the Defendant, the Plaintiff has been subjected to a discriminatory, hostile and offensive work environment because of his race and national origin.

162. The Plaintiff was and is qualified for his position while working for the Defendant.

163. The Defendant violated the Florida Civil Rights Act by discriminating against the Plaintiff because of his race and national origin in the terms, conditions, and privileges of his employment.

164. As a direct and proximate result of the Defendant's intentional conduct, the Plaintiff has suffered, is now suffering and will continue to suffer emotional distress, humiliation, embarrassment and economic losses.

165. Any alleged nondiscriminatory reason for this treatment of the Plaintiff by the Defendant is a mere pretext for the actual reason for discriminating against him based on his race and national origin.

166. The Defendant's actions were malicious and were recklessly indifferent to the Plaintiff's rights pursuant to Fla. Stat. § 760.10.

167. The aforementioned actions of the Defendant were done wantonly, willfully, maliciously and with reckless disregard of the consequences of such actions.

**WHEREFORE**, the Plaintiff requests that this Honorable Court:

a) Declare that the acts complained of herein are in violation of the Florida Civil Rights Act;

b) Award the Plaintiff compensatory damages for emotional distress, embarrassment and humiliation;

c) Grant a permanent injunction enjoining the Defendant, its officers, successors, assigns, and all persons in active concert or participation with it, from engaging in any employment practice which discriminates on the basis of race and national origin.

d) Order the Defendant to make the Plaintiff whole, by compensating him for lost wages, benefits, including front pay, back pay with prejudgment interest;

e) Award a monetary judgment representing prejudgment interest;

f) Award any other compensation allowed by law including punitive damages and attorney's fees (448.104);

g) Award the Plaintiff costs of this action, including reasonable attorneys' fees;

h) Grant such other and further relief as the Court deems just and proper.

**COUNT IX – RACE AND NATIONAL ORIGIN DISCRIMINATION (RETALIATION) – FCRA**

168. Plaintiff re-states and re-alleges paragraphs 1 through 56 of this Complaint as if set forth fully herein.

169. At all times material hereto, Defendant failed and refused to comply with the Florida Civil Rights Act of 1992, § 760.10 et seq., which makes it an unlawful employment practice for an employer "to discharge or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, national origin, age, handicap, or marital status," or to retaliate against an individual who has opposed such discrimination.

170. Plaintiff is a Black male of Jamaican national origin a member of protected classes based on race, color, and national origin.

171. During his twenty-four (24)-year tenure with Defendant, Plaintiff was a model employee who consistently received positive evaluations, merit pay increases, and commendations for leadership and reliability.

172. Beginning in or about May 2023, immediately after Plaintiff's spouse, who was also employed by Defendant, raised internal complaints of race-based treatment, Defendant's management including General Manager Brent Stuart and Operations Manager Rafael Cruz began to scrutinize, isolate, and undermine Plaintiff in ways that White, lighter-skinned or non-Jamaican supervisors did not experience.

173. Plaintiff was excluded from managers' meetings, denied the staffing support previously promised, and given a disproportionate workload compared to similarly situated non-Black supervisors.

174. On or about October 19, 2023, Plaintiff engaged in protected activity by submitting a written complaint to Human Resources, explicitly reporting race and national origin discrimination by management. Plaintiff's HR complaint constituted opposition to unlawful employment practices within the meaning of § 760.10(7), Fla. Stat.

175. Instead of addressing his concerns, Defendant escalated its discriminatory conduct. Within weeks of his complaint, Plaintiff was pressured to sign an unjustified Performance Improvement Plan and subjected to daily hostility, excessive scrutiny, and ostracism by supervisory staff.

176. On December 15, 2023, barely eight (8) weeks after his protected complaint Defendant terminated Plaintiff's employment, citing vague and inconsistent reasons that were pretextual and unsupported by his employment record. Non-Black and non-Jamaican supervisors with equal or greater alleged infractions were not disciplined or discharged.

177. The close temporal proximity between Plaintiff's protected activity and his termination, combined with Defendant's disparate enforcement of its policies, demonstrates that retaliation was the motivating factor for Defendant's actions.

178. Plaintiff was and remains fully qualified for his position. His termination and the preceding hostile treatment occurred not because of legitimate business reasons but because he complained about race and national-origin discrimination and refused to remain silent in the face of unlawful practices.

179. As a direct and proximate result of Defendant's intentional, retaliatory, and discriminatory conduct, Plaintiff has suffered and continues to suffer economic losses, including lost wages, lost benefits, and loss of career opportunities, as well as emotional distress, humiliation, embarrassment, and mental anguish.

180. Defendant's actions were malicious and undertaken with reckless indifference to Plaintiff's statutory rights under the FCRA. The retaliatory discharge was wanton, willful, and executed with conscious disregard for the consequences of such actions.

**WHEREFORE**, the Plaintiff requests that this Honorable Court:

a) Declare that the acts complained of herein are in violation of the Florida Civil Rights Act;

b) Award the Plaintiff compensatory damages for emotional distress, embarrassment and humiliation;

c) Grant a permanent injunction enjoining the Defendant, its officers, successors, assigns, and all persons in active concert or participation with it, from engaging in any employment practice which discriminates on the basis of race and national origin.

d) Order the Defendant to make the Plaintiff whole, by compensating him for lost wages, benefits, including front pay, back pay with prejudgment interest;

e) Award a monetary judgment representing prejudgment interest;

f) Award any other compensation allowed by law including punitive damages and attorney's fees (448.104);

g) Award the Plaintiff costs of this action, including reasonable attorneys' fees;

h) Grant such other and further relief, as the Court deems just and proper.

**COUNT X – AGE DISCRIMINATION (DISPARATE TREATMENT) – ADEA**

179. Plaintiff repeats and re-alleges paragraphs 1 through 56 of this Complaint as if fully set forth herein.

180. At all times material hereto, Plaintiff Owen L. Ellis was an "employee" within the meaning of 29 U.S.C. § 630(f).

181. At all times material to this action, Defendant engaged in unlawful discrimination against Plaintiff because of his age, in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 et seq.

182. Plaintiff is sixty-three (63) years old and, therefore, a member of the protected class of individuals over the age of forty (40) as defined by the ADEA.

183. Plaintiff was fully qualified to perform the essential functions of his position as Night Manager/Supervisor at Defendant's Miami-Dade logistics facility.

184. Plaintiff had more than two decades of experience, a consistent record of strong performance, and had received a raise and written commendation card in April 2023 for his exemplary leadership.

185. Defendant intentionally engaged in unlawful employment practices and discrimination in violation of the ADEA by treating Plaintiff less favorably than younger supervisors in the terms and conditions of his employment, including, but not limited to:

a) Assigning him heavier workloads without commensurate staffing support;

b) Excluding him from supervisor meetings and management decision-making;

c) Subjecting him to excessive scrutiny and unwarranted criticism; and

d) Ultimately terminating his employment and replacing him with younger, less experienced employees.

186. The pattern of differential treatment began shortly after Defendant's management, including Brent Stuart and Rafael Cruz, began targeting Plaintiff for removal and expressing a desire to bring in "fresh blood" and "younger leadership" to "move the warehouse forward."

187. Defendant's asserted reasons for Plaintiff's termination were pretextual and unworthy of belief. The alleged "performance concerns" cited in Plaintiff's coerced Performance Improvement Plan were unfounded, contradicted by recent positive reviews, and selectively applied only to Plaintiff and other older supervisors.

188. The adverse actions described in paragraphs 13 through 56 above deprived Plaintiff of equal employment opportunities and ultimately cost him his position, because of his age, in violation of the ADEA.

189. Similarly situated younger supervisors, some in their thirties and forties, were treated more favorably under identical or worse circumstances, receiving support, leniency, or reassignment rather than termination.

190. The discriminatory intent of Defendant's decision-makers is further evidenced by the timing of events: within months of Plaintiff's commendation and just weeks after he raised concerns about disparate treatment, he was removed from his longstanding position and replaced by a younger, non-Black employee.

191. As a direct and proximate result of Defendant's willful and intentional violations of the ADEA, Plaintiff has suffered and continues to suffer substantial economic losses, including loss of income, benefits, and career opportunities, as well as emotional pain, humiliation, and mental anguish.

192. Defendant's discriminatory acts were willful, entitling Plaintiff to an award of liquidated damages under 29 U.S.C. § 626(b).

**WHEREFORE**, the Plaintiff requests that this Honorable Court:

a) Enter judgment in the Plaintiff's favor and against the Defendant for its violations of the ADEA;

b) Award the Plaintiff actual damages suffered, including lost wages, loss of fringe benefits and damages;

c) Award the Plaintiff liquidated damages;

d) Award the Plaintiff prejudgment interest on his damages award;

e) Award the Plaintiff reasonable costs and attorneys' fees; and

f) Grant the Plaintiff such other and further relief as this Court deems equitable and just.

**COUNT XI: AGE DISCRIMINATION (HOSTILE WORK ENVIRONMENT) – ADEA**

193. The Plaintiff re-states and re-alleges paragraphs 1 through 56 as if set forth in full herein.

194. The Plaintiff is sixty-five (65) years old and as such is a member of a group protected under the ADEA from discrimination on the basis of age.

195. Commencing on or about June 2023, after new management including General Manager Brent Stuart and Operations Manager Rafael Cruz assumed greater authority, Defendant's managers and supervisors engaged in a persistent pattern of severe and pervasive age-based harassment involving: (a) expressing a desire for younger leadership; (b) coercing Plaintiff into signing an unwarranted Performance Improvement Plan despite decades of strong performance; (c) excluding Plaintiff from supervisor meetings and managerial communications necessary to perform his role; (d) removing Plaintiff from the interview and selection process for his own shift; and (e) assigning Plaintiff heavier workloads and chronic understaffing while providing additional support to substantially younger supervisors. This persistent conduct altered the terms and conditions of Plaintiff's employment and created a hostile work environment based on age.

196. The Plaintiff did not welcome the conduct described above and advised Defendant that such conduct was unwelcome, including by verbally objecting to the discriminatory treatment and submitting a written complaint to Human Resources on or about October 19, 2023, reporting that he was being targeted and harassed because of his age.

197. The Plaintiff was subjected to the harassment because of his age.

198. The harassment adversely affected Plaintiff's psychological well-being.

199. The harassment unreasonably interfered with Plaintiff's work performance.

200. The harassment to which Plaintiff was subjected would affect the psychological well-being and unreasonably interfere with the work performance of a reasonable person.

201. The harassment was sufficiently widespread, pervasive, and prevalent in Defendant' workplace at all times pertinent hereto to charge Defendant with constructive notice of it.

202. Plaintiff gave the Corporate Defendant actual notice of the age-based harassment on or about October 19, 2023, when he submitted a written complaint to Human Resources reporting that he was being singled out, marginalized, and subjected to discriminatory treatment because of his age.

203. The Corporate Defendant failed to investigate Plaintiff's complaint.

204. The Corporate Defendant failed to take adequate remedial action.

205. The harassment continued to occur following Plaintiff's complaint and Defendant's response.

206. The Plaintiff sustained emotional suffering and injury attributable to the harassment.

207. The Corporate Defendant acted with malice and with reckless indifference to the Plaintiff's civil rights and emotional and physical well-being.

**WHEREFORE**, the Plaintiff requests that this Honorable Court:

a) Enter judgment in the Plaintiff's favor and against the Defendant for its violations of the ADEA;

b) Award the Plaintiff actual damages suffered, including lost wages, loss of fringe benefits and damages;

c) Award the Plaintiff back pay, liquidated damages, interest, front pay (or reinstatement), and any other damages allowed under the ADEA;

d) Award the Plaintiff prejudgment interest on his damages award;

e) Award the Plaintiff reasonable costs and attorneys' fees; and

f) Grant the Plaintiff such other and further relief, as this Court deems equitable and just.

**COUNT XII : AGE DISCRIMINATION IN EMPLOYMENT ACT (ADEA) (RETALIATION)**

208. Plaintiff repeats and re-alleges paragraphs 1 through 56 of this Complaint as if fully stated herein.

209. At all times material hereto, Defendant violated the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623(d), which makes it unlawful to retaliate against an employee for opposing unlawful employment practices under the ADEA.

210. Plaintiff is a 65-year-old male who served Defendant faithfully for more than twenty-four (24) years, most recently as a Night Supervisor/Night Manager.

211. Plaintiff consistently met and exceeded Defendant's legitimate performance expectations. He received positive evaluations, raises, and a commendation in April 2023 recognizing his "great leadership."

212. During 2023, Plaintiff began observing a shift in the workplace culture following management changes, including the arrival of General Manager Brent Stuart and Operations Manager Rafael Cruz, both of whom favored younger supervisors.

213. By mid-2023, Plaintiff was being treated differently than substantially younger employees performing the same job duties. Younger supervisors in their 30s and 40s were given additional resources, better scheduling, and leniency on errors, while Plaintiff was excluded from meetings, denied adequate staffing, and subjected to unwarranted criticism.

214. On October 19, 2023, Plaintiff made a written internal complaint to Defendant's Human Resources Department, reporting that he was being targeted and unfairly disciplined due to his age, race, and national origin. This complaint constituted protected activity under the ADEA.

215. Instead of remedying the discriminatory environment, Defendant responded to Plaintiff's protected complaint with retaliatory actions. Management intensified its scrutiny, excluded him from team communications, and began documenting trivial alleged performance issues to justify termination.

216. Defendant's retaliatory motive was clear: Plaintiff's termination followed closely less than two months after his protected complaint, on December 15, 2023.

217. The alleged reason for his termination, "failure to meet expectations," was pretextual. It was inconsistent with his prior record of excellence, the April 2023 raise, and Defendant's own written praise for his leadership.

218. Defendant subsequently replaced Plaintiff with significantly younger, non-Black employees, despite Plaintiff's superior qualifications and institutional knowledge.

219. Defendant's conduct culminating in Plaintiff's retaliatory discharge was willful and in reckless disregard of Plaintiff's rights under the ADEA.

220. As a direct and proximate result of Defendant's intentional retaliation, Plaintiff has suffered and continues to suffer economic losses, including lost wages, lost benefits, and loss of future earnings.

221. Plaintiff has also experienced emotional distress, humiliation, and mental anguish, having been wrongfully terminated after more than two decades of loyal service.

222. Defendant's retaliatory actions were willful, wanton, and malicious, justifying an award of liquidated damages under 29 U.S.C. § 626(b).

**WHEREFORE,** the Plaintiff requests that this Honorable Court:

a) Enter judgment in the Plaintiff's favor and against the Defendant for its violations of the ADEA;

b) Award the Plaintiff actual damages suffered, including lost wages, loss of fringe benefits and damages;

c) Award the Plaintiff liquidated damages;

d) Award the Plaintiff prejudgment interest on his damages award;

e) Award the Plaintiff reasonable costs and attorneys' fees; and

f) Grant the Plaintiff such other and further relief as this Court deems equitable and just.

**COUNT XIII – AGE DISCRIMINATION (FCRA)**

223. Plaintiff re-states and re-alleges paragraphs 1 through 56 of this Complaint as if set forth in full herein.

224. At all times material hereto, Defendant failed to comply with the Florida Civil Rights Act of 1992, § 760.10 et seq., which makes it unlawful for an employer to discharge or otherwise discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment because of that individual's age.

225. Plaintiff, born in 1960, was 63 years old at the time of his termination and is therefore a member of the protected class of employees over forty (40).

226. Plaintiff served Defendant with distinction for nearly twenty-four (24) years, rising to Night Supervisor / Manager, and was fully qualified for his position, having consistently received positive evaluations, pay raises, and an April 2023 commendation for "great leadership."

227. In or about mid-2023, after the hiring of younger management including Operations Manager Rafael Cruz and General Manager Brent Stuart, Defendant began to marginalize Plaintiff because of his age. Younger supervisors in their 30s and 40s were favored for promotions, meetings, and training opportunities, while Plaintiff one of the oldest employees in leadership was excluded from decision-making and subjected to excessive scrutiny.

228. In October 2023, despite decades of excellent performance, Defendant coerced Plaintiff into signing a PIP a document typically used to build a record for termination. No younger supervisor with comparable or inferior performance was placed on a PIP.

229. On or about December 15, 2023, Defendant abruptly terminated Plaintiff, citing shifting and unsupported reasons, including "communication style" and "resistance to change." Those alleged reasons were pretextual; they were never raised in prior reviews and were contradicted by his recent commendation and merit pay increase.

230. Defendant subsequently assigned Plaintiff's job duties to significantly younger, non-Black employees, demonstrating that age was a determining factor in the decision to discharge him.

231. The practices complained of in paragraphs 13 through 56 had the effect of depriving Plaintiff of equal employment opportunities and of his employment because of his age.

232. Defendant's stated reasons for terminating Plaintiff were false and pretextual, masking a pattern of age-based bias within its management ranks designed to replace long-tenured employees with younger, lower-paid workers.

233. As a direct and proximate result of Defendant's intentional violation of the FCRA, Plaintiff has suffered and continues to suffer loss of wages, loss of benefits, mental anguish, humiliation, and emotional distress.

234. Defendant's actions were willful, malicious, and undertaken with reckless indifference to Plaintiff's rights under the Florida Civil Rights Act. The discriminatory termination was wanton and executed with conscious disregard for the consequences to a loyal, long-serving employee.

**WHEREFORE**, the Plaintiff requests that this Honorable Court:

a) Enter judgment in the Plaintiff's favor and against the Defendant for its violations of 42 U.S.C.A. § 1981, as amended;

b) Award the Plaintiff actual damages suffered;

c) Award the Plaintiff compensatory damages under 42 U.S.C.A. § 1981 for the embarrassment, anxiety, depression, humiliation and emotional distress the Plaintiff has suffered;

d) Award the Plaintiff prejudgment interest on his damages award;

e) Award Plaintiff punitive damages;

f) Enjoin the Defendant, its officers, agents, employees and anyone acting in concert with them, from discriminating, harassing and retaliating against the Plaintiff and any employee;

g) Award the Plaintiff reasonable costs and attorneys' fees; and

h) Grant the Plaintiff such other and further relief as this Court deems equitable and just.

**COUNT XIV: AGE DISCRIMINATION (HOSTILE WORK ENVIRONMENT) – FCRA**

235. The Plaintiff re-states and re-alleges paragraphs 1 through 56 as if set forth in full herein.

236. The Plaintiff is sixty-five (65) years old and as such is a member of a group protected under the FCRA on the basis of age.

237. Commencing on or about June 2023, after new management including General Manager Brent Stuart and Operations Manager Rafael Cruz assumed greater authority, Defendant's managers and supervisors engaged in a persistent pattern of severe and pervasive age-based harassment involving: (a) expressing a desire for younger leadership; (b) coercing Plaintiff into signing an unwarranted Performance Improvement Plan despite decades of strong performance; (c) excluding Plaintiff from supervisor meetings and managerial communications necessary to perform his role; (d) removing Plaintiff from the interview and selection process for his own shift; and (e) assigning Plaintiff heavier workloads and chronic understaffing while providing additional support to substantially younger supervisors. This persistent conduct altered the terms and conditions of Plaintiff's employment and created a hostile work environment based on age.

238. The Plaintiff did not welcome the conduct described in paragraphs 13 through 56, and advised the Defendant that such conduct was unwelcome.

239. The Plaintiff was subjected to the harassment because of his age.

240. At all times material hereto, the Defendant failed to comply with the Florida Civil Rights Act of 1992, Fla. Stat. § 760.10 *et seq*., which states, in part, that it is an unlawful employment practice for an employer "to discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, national origin, age, handicap, or marital status."

241. The Plaintiff is a member of protected class of citizens forty (40) years of age or older.

242. During the course of the Plaintiff's employment with the Defendant, the Plaintiff has been subjected to a discriminatory, hostile and offensive work environment because of his age, as more fully described in paragraphs 13 through 56 of this Complaint.

243. The discriminatory conduct referred to in paragraphs 13 through 56 of this Complaint is and was offensive to the Plaintiff and would be offensive to a reasonable person.

244. The Plaintiff was subjected to the conduct referred to in this Complaint because he is over the age of 40 years.

245. Similarly situated employees who are not forty years of age or older were not subjected to the conduct described and referred to in paragraphs 13 through 56 of this Complaint.

246. During the course of the Plaintiff's employment with the Defendant, the Plaintiff has been subjected to a discriminatory, hostile and offensive work environment because of his age.

247. The Plaintiff was and is qualified for his position while working for the Defendant.

248. The Defendant violated the Florida Civil Rights Act by discriminating against the Plaintiff because of his age in the terms, conditions, and privileges of his employment.

249. As a direct and proximate result of the Defendant's intentional conduct, the Plaintiff has suffered, is now suffering and will continue to suffer emotional distress, humiliation, embarrassment and economic losses.

250. Any alleged nondiscriminatory reason for this treatment of the Plaintiff by the Defendant is a mere pretext for the actual reason for discriminating against him based on his age.

251. The Defendant's actions were malicious and were recklessly indifferent to the Plaintiff's rights pursuant to Fla. Stat. § 760.10.

252. The aforementioned actions of the Defendant were done wantonly, willfully, maliciously and with reckless disregard of the consequences of such actions.

**WHEREFORE**, the Plaintiff requests that this Honorable Court:

a) Declare that the acts complained of herein are in violation of the Florida Civil Rights Act;

b) Award the Plaintiff compensatory damages for emotional distress, embarrassment and humiliation;

c) Grant a permanent injunction enjoining the Defendant, its officers, successors, assigns, and all persons in active concert or participation with it, from engaging in any employment practice which discriminates on the basis of race and national origin.

d) Order the Defendant to make the Plaintiff whole, by compensating him for lost wages, benefits, including front pay, back pay with prejudgment interest;

e) Award a monetary judgment representing prejudgment interest;

f) Award any other compensation allowed by law including punitive damages and attorney's fees (448.104);

g) Award the Plaintiff costs of this action, including reasonable attorneys' fees;

h) Grant such other and further relief as the Court deems just and proper.

**COUNT XV: AGE DISCRIMINATION (RETALIATION) - FCRA**

253. Plaintiff re-states and re-alleges paragraphs 1 through 56 as if set forth in full herein.

254. At all times material, Defendant failed to comply with the Florida Civil Rights Act of 1992, Fla. Stat. § 760.10 et seq., which makes it unlawful for an employer "to discharge, fail to hire, or otherwise discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, national origin, age, handicap, or marital status."

255. Plaintiff is a member of multiple protected classes as a Black male of Jamaican national origin and over the age of 40, each protected under the FCRA.

256. Plaintiff engaged in protected activity under the FCRA when, on or about October 19, 2023, he filed a written complaint with Human Resources reporting that he was being subjected to discriminatory and disparate treatment based on his race, color, national origin, and age.

257. Defendant's Human Resources Department acknowledged receipt of the complaint but took no remedial action to investigate or stop the discrimination. Instead, Plaintiff's managers, General Manager Brent Stuart and Operations Manager Rafael Cruz, began to retaliate against him almost immediately.

258. Following Plaintiff's protected complaint, Defendant subjected him to heightened scrutiny, exclusion from supervisor meetings, removal from interviewing duties, and the creation of a false "performance" record designed to justify termination.

259. Defendant's retaliatory campaign culminated on December 15, 2023, when Plaintiff after twenty-four (24) years of service was terminated under the pretextual claim that he "failed to meet expectations."

260. This reason was demonstrably false and retaliatory. Just months earlier, in April 2023, Plaintiff had received a raise and written commendation for "exceptional leadership and reliability." No legitimate or documented performance issues existed prior to his protected complaint.

261. The temporal proximity between Plaintiff's complaint and his termination, coupled with Defendant's pattern of retaliatory conduct, supports a strong inference of causation under the FCRA.

262. Plaintiff was and remains fully qualified for his position. Defendant's retaliatory termination deprived him of his career, income, and reputation solely because he engaged in protected activity opposing unlawful discrimination.

263. Defendant's conduct constitutes unlawful retaliation in violation of Fla. Stat. § 760.10(7), which prohibits employers from taking adverse actions against employees who oppose discriminatory practices.

264. As a direct and proximate result of Defendant's intentional and retaliatory conduct, Plaintiff has suffered and continues to suffer emotional distress, humiliation, embarrassment, mental anguish, loss of dignity, and economic harm, including lost wages and benefits.

265. Defendant's actions were undertaken maliciously, willfully, and with reckless indifference to Plaintiff's federally and statutorily protected rights under the FCRA.

266. The aforementioned conduct was not isolated or inadvertent; it was deliberate, coordinated, and calculated to silence Plaintiff and discourage others from engaging in protected activity.

267. As a result, Plaintiff has sustained damages that are ongoing and continuous in nature and is entitled to all available remedies under Florida law.

**WHEREFORE**, the Plaintiff requests that this Honorable Court:

a) Declare that the acts complained of herein are in violation of the Florida Civil Rights Act;

b) Award the Plaintiff compensatory damages for emotional distress, embarrassment and humiliation;

c) Grant a permanent injunction enjoining the Defendant, its officers, successors, assigns, and all persons in active concert or participation with it, from engaging in any employment practice which discriminates on the basis of race and national origin.

d) Order the Defendant to make the Plaintiff whole, by compensating him for lost wages, benefits, including front pay, back pay with prejudgment interest;

e) Award a monetary judgment representing prejudgment interest;

f) Award any other compensation allowed by law including punitive damages and attorney's fees (448.104);

g) Award the Plaintiff costs of this action, including reasonable attorneys' fees;

h) Grant such other and further relief, as the Court deems just and proper.

**JURY TRIAL DEMAND**

The Plaintiff demands trial by jury of all issues so triable as of right.

**Dated: November 7, 2025.**

Respectfully submitted,

**s/ Tanesha W. Blye**

Tanesha W. Blye, Esq.
(FBN: 738158)

Email: attorneyblye@lawyerofjustice.com
LAW OFFICES OF T. WALLS BLYE, PLLC
66 West Flagler Street, Ste. 900
Miami, Florida 33130
Main Phone: (786) 796-1814
***Counsel for Plaintiff***